# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

TIMOTHY N. EVANS                                             **PLAINTIFF**

**V.**                                               **NO. 4:15-CV-72-DMB-JMV**

**DR. JUAN SANTOS, et al.**                                **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Timothy Evans, an inmate housed at the Mississippi State Penitentiary, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he has been denied medical attention in retaliation for filing a complaint about his living conditions and because of officials' desire to discriminate against him based on his race.[1]  Before the Court are a number of motions filed:  (1) a motion for summary judgment by Dr. Juan Santos, Angela Brown, Paul Madubuonwu, Freddie Williams, Ms. Leflore, Norma Evans, and LPN Lamar ("Wexford Defendants"),[2] Doc. #187, who at all relevant times were contract medical providers for Wexford Health Sources;[3] (2) a motion for summary judgment by Nathan Harris, Superintendent Earnest Lee, and Co-4 Carla Lofton

---

[1] Timothy amended his complaint a number of times.  *See* Docs. #6, #9, #10, #13, #14, #18, #22, #24.  After conducting a *Spears* hearing, United States Magistrate Judge Jane M. Virden issued a Report and Recommendation recommending that all of his claims against the named defendants proceed except those against Norma Evans because Timothy indicated he intended her to be a witness only.  Doc. #26.  Because Timothy subsequently indicated that further discovery supported Norma as a defendant, this Court adopted in part the Report and Recommendation, rejecting only that part which recommended the claims against Norma not be permitted to proceed.  Doc. #88.

[2] Three days after the Wexford Defendants filed their motion for summary judgment, the MDOC Defendants filed a "Joinder in Motion for Summary Judgment of Wexford Defendants [187]."  Doc. #194.

[3] Wexford providers RN Horn and Dr. Rivera were also named as defendants but have not appeared in this action.  Horn was served with process while Rivera was not successfully served.  Doc. #113; Doc. #80.  No default against Horn has been sought.  Because the arguments in the Wexford Defendants' summary judgment motion are equally applicable to all Wexford providers named as defendants, the Court considers them as also applicable to Horn and Rivera.  *See, e.g.*, *Al-Hashimi v. Scott*, 756 F.Supp. 1567, 1569 (S.D. Ga. 1991) (stating that "[a]lthough the other defendants ... did not join in the motion for summary judgment, the rationale for granting [the movant's] motion applies equally to them" to grant summary judgment to all defendants).

("MDOC Defendants"), Doc. #192; (3) Norma's[4] motion to dismiss for insufficient service of process, Doc. #189; (4) Timothy's motion to join Norma's motion to dismiss, Doc. #213; (5) Timothy's motion seeking dismissal of the MDOC Defendants, Doc. #214; (6) Timothy's "Motion to Counter Summary Judgement," Doc. #215, which the Court construes as a summary judgment motion; and (7) the Wexford Defendants' motion to reschedule trial, Doc. #251.[5]   For the reasons below, the Wexford Defendants' motion for summary judgment and the MDOC Defendants' motion for summary judgment will be granted; Norma's motion to dismiss, and Timothy's motion to join Norma's motion, will be denied as moot; Timothy's motion to dismiss the MDOC Defendants will be denied as moot; Timothy's motion for summary judgment will be denied; and the Wexford Defendants' motion to reschedule trial will be denied as moot.

## I
## Background and Procedural History

Timothy arrived at the Mississippi State Penitentiary as a death row inmate in August 2013.  He alleges that a new roof was put on his housing unit in July 2014 and that shortly thereafter, water began seeping into his cell.  Timothy, who suffers from a number of chronic medical conditions, including back pain, gastroesophageal reflux disease ("GERD"), Hepatitis C, and psoriasis, claims that all of his medical care was terminated on July 21, 2014, approximately one week after he filed a grievance to prison officials about the water leaks.  According to Timothy, he is being denied medical care (such as medication, skin biopsies, and annual Hepatitis C screening) in retaliation for his complaints and because he is a member of the Caucasian race.

---

[4] To avoid confusion, the first names of Norma Evans and Timothy Evans will be used.

[5] Of those motions not filed by Timothy, Timothy filed a response to only the Wexford Defendants' summary judgment motion.   Doc. #216; Doc. #241.

At his *Spears*[6] hearing, Timothy informed the Court that his primary complaint is that he is routinely denied access to his stomach medication. Specifically, he stated that the defendants routinely deny him Prilosec (Omeprazole),[7] which is necessary to prevent severe vomiting and weight loss. Timothy alleges that he has been informed that the medicine is delayed at times due to a "glitch" in the system but believes this is incorrect, as he has been denied medication for several days in August, October, November, and December of 2014, as well as in April of 2015. He claims that his criminal attorney, Alison Steiner, intervened on his behalf to get the medicine until April 5, 2015, when he was notified that he would no longer receive Prilosec and would receive only Rolaids. Timothy alleges to have made an emergency visit to the hospital on May 17, 2015, however, and received Prilosec again the following day. Between the time he was started on only Rolaids to treat his GERD and his hospitalization in May, he alleges that he was repeatedly denied medical attention.

At the conclusion of his *Spears* hearing on September 14, 2015, Timothy stated that he was then currently receiving his medication. He has since claimed, however, that the defendants continue to deny him medical care on the basis of racial animus and retaliatory motives. *See, e.g.,* Doc. # 74; Doc. #104; Doc. #203.

## II
## Summary Judgment Standard

Summary judgment is proper only when the pleadings and evidence, viewed in a light most

---

[6] Named for the case of *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), a *Spears* hearing may be utilized to determine whether the complaint states a justiciable claim.

[7] Prilosec, generically named Omeprazole, is a proton pump inhibitor that decreases the production of stomach acid. It is often prescribed to treat symptoms of GERD. *See* http://www.drugs.com/prilosec.html (last visited September 1, 2016).

favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a) & (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).   A fact is deemed "material" if "its resolution in favor of one party might affect the outcome of the lawsuit under governing law."   *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citation omitted).

"If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *McKee v. CBF Corp.*, 299 F. App'x 426, 428 (5th Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 331)).   If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact, and summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III
### Medical Care

Timothy's constitutional right to medical care was abridged only if officials acted with deliberate indifference to his serious medical needs, as deliberate indifference to such needs violates the Eighth Amendment's prohibition against cruel and unusual punishment.   *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1978).   The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law."   *Farmer v. Brennan*, 511 U.S. 825, 839 (1994).   Under this standard, a state actor is not liable under § 1983 unless the plaintiff alleges facts which, if true, would demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it.   *Farmer*, 511 U.S. at 847.

A plaintiff cannot demonstrate a prison official's violation of the "deliberate indifference" standard by pointing to negligent conduct. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Even if physicians misdiagnose or mistreat the plaintiff's condition in what amounts to medical malpractice, a prisoner cannot sustain a § 1983 claim without a showing of deliberate indifference. *See, e.g., Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (medical malpractice alone does not support § 1983 cause of action). Nor is it sufficient for a plaintiff to argue that additional or different medical treatment should have been given, as a plaintiff's disagreement with the course of medical treatment chosen will not support a claim of deliberate indifference. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Rather, liability under the deliberate indifference standard requires the plaintiff to produce evidence "that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Davidson v. Tex. Dept. of Crim. J.*, 91 F. App'x 963, 965 (5th Cir. 2004) (citation omitted); *see Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (deliberate indifference requires inmate to show prison officials engaged in conduct that "clearly evince[s] a wanton disregard for any serious medical needs").

## IV
## Wexford Defendants' Motion for Summary Judgment

Timothy alleges that he began experiencing the denial of medication and medical services in July 2014. The Wexford Defendants, all of whom were employed by Wexford Health Sources and provided medical care to inmates in MDOC custody at the Mississippi State Penitentiary,[8]

---

[8] *See* Docs. #187-1 to 187-4. Wexford Health Sources no longer provides medical services to MDOC inmates; that

have moved for summary judgment arguing, among other things, that Timothy "has regularly been treated, and has been given all other necessary medical services."[9]   Doc. #188 at 8.

In support of their motion, the Wexford Defendants submitted the sworn affidavits of Dr. Santos and Angela Brown, which attest that Timothy's numerous health problems have been appropriately treated with a variety of medications and by a number of medical providers.   *See* Doc. #187-1; Doc. #187-2.   In particular, Dr. Santos maintains that Timothy's conditions are regularly monitored in the various chronic care clinics and that Timothy receives various medications, including Prilosec for his stomach complaints, Zocor for elevated lipid levels, Methotrexate for arthritic conditions, Keflex for psoriasis, antacids, Ibuprofen, and Tylenol.   Doc. #187-1 at ¶ 4.   Dr. Santos also attests that Timothy's "lab tests and liver function tests do not indicate the need for additional treatment for hepatitis C."   *Id.* at ¶ 5.

Also as an exhibit to their motion, the Wexford Defendants filed, under seal, Timothy's medical records through August 27, 2015.   Doc. #202.   These records, which include the treatment and/or medication updates Timothy received after the alleged denial of medical care began on July 21, 2014, show that from July 19, 2014, through April 13, 2015, Timothy submitted at least fifteen "sick call" requests for medical treatment, the majority of which were requests for medication.   *Id.* at 38–55.   According to his medical records, Timothy received the following treatment, as summarized, after July 21, 2014:

| | |
|---|---|
| July 22, 2014: | Psychiatric visit. *Id.* at 155–56. |
| July 23, 2014: | Psychiatric medications updated. *Id.* at 156. |

service is now provided by Centurion of Mississippi.   *See, e.g.,* Doc. #187-1.

[9] As earlier mentioned, the MDOC Defendants "join[ed] in and adopt[ed] the arguments and authorities contained in the Wexford Defendants Motion for Summary Judgment [187] which demonstrate that there has been no deliberate indifference to Plaintiff's serious medical needs."   Doc. #194.

| | |
|---|---|
| July 24, 2014: | Dental follow-up to complete dentures. *Id.* at 157–58. |
| July 24, 2014: | Medical visit for psoriasis and eczema; Methotrexate started and psoriasis medication refilled. *Id.* at 159–60. |
| Aug. 1, 2014: | TED hose (for varicose veins) ordered by Nurse Brown and approved by Dr. Madubuonwu. *Id.* at 164, 166. |
| Aug. 1, 2014: | Placed on suicide precaution at Unit 42 hospital following emergency psychiatric visit by Leflore. *Id.* at 164–65. |
| Aug. 1, 2014: | Enrolled in psoriasis chronic care clinic. *Id.* at 167. |
| Aug. 2, 2014: | Pharmacy faxed pantoprazole sodium[10] refill. *Id.* at 176. |
| Aug. 5, 2014: | Psychiatric medicine changed. *Id.* at 189. |
| Aug. 7, 2014: | Treated for sick-call request previous day; Dr. Santos ordered Prilosec; 60-day prescription faxed to pharmacy. *Id.* at 201, 204. |
| Aug. 13, 2014: | Medication orders refilled by Dr. Madubuonwu, including a 60-day supply of Prilosec. *Id.* at 202–03. |
| Aug. 14, 2014: | Treated following August 11th sick call request for back pain medication refills. Dr. Santos refaxed medications, as medications were initially sent to wrong pharmacy. X-rays for back and spine ordered. *Id.* at 205–06. |
| Aug. 20, 2014: | Mental health office visit with Leflore. Timothy reported he is currently receiving all medications. *Id.* at 209. |
| Aug. 21, 2014: | Follow-up for eczema/psoriasis with Dr. Santos; new x-ray ordered. *Id.* at 210–11. |
| Sept. 2, 2014: | Seen by medical after complaint lodged that Timothy's stomach medicine runs out on Sept. 13, 2014; nurse noted computer showed his medication was ordered. *Id.* at 215. |
| Sept. 4, 2014: | Received dentures. *Id.* at 216–17. |
| Sept. 4, 2014: | Treated at Hepatitis chronic care clinic; labs reviewed; pantoprazole sodium prescription discontinued and Prilosec prescription added. *Id.* at 219–23. |
| Sept. 11, 2014: | Attended chronic care clinics, including Hepatitis. *Id.* at 227-31. |
| Oct. 8, 2014: | Mental health treatment plan formulated by Leflore. *Id.* at 235. |
| Oct. 8, 2014: | Sick call visit; medications received; referred to doctor. *Id.* at 236. |

---

[10] Pantoprazole sodium is a proton pump inhibitor that decreases the amount of acid produced in the stomach. https://www.drugs.com/pantoprazole.html (last visited December 20, 2016).

| | |
|---|---|
| Oct. 9, 2014: | Seen by physician for complaint about spine; doctor ordered copy of Timothy's latest TSPINE x-ray. *Id.* at 238. |
| Oct. 10, 2014: | Mental health office visit. *Id.* at 240. |
| Oct. 14, 2014: | 90-day psychiatric visit. *Id.* at 242. |
| Oct. 14, 2014 : | Psychiatric medication update. *Id.* at 243. |
| Oct. 16, 2014: | Blood pressure check; flu vaccine administered. *Id.* at 244–45. |
| Oct. 16, 2014: | Sick call visit regarding spine issues/psoriasis; Dr. Santos updated Timothy's medications to add Naproxen and to refill cream. *Id.* at 245–46. |
| Oct. 23, 2014: | Sick call visit for back pain; Dr. Santos ordered Naproxen. *Id.* at 248. |
| Oct. 30, 2014: | Blood pressure check follow-up; Dr. Madubuonwu ordered Timothy be brought in for walking stick and evaluation of back pain. *Id.* at 249. |
| Oct. 31, 2014: | Dr. Santos evaluated Timothy's pack pain; removed Naproxen prescription and added Excedrin to medications; ordered Timothy be relocated downstairs to bottom tier. *Id.* at 253. |
| Nov. 6, 2014: | Sick call visit for ear pain; Dr. Santos prescribed ointment. *Id.* at 255. |
| Nov. 7, 2014: | Mental health office visit. *Id.* at 256. |
| Nov. 26, 2014: | Sick call evaluation by nurse for multiple complaints: back spasms, request for pain medications, to complain that stomach medications are expiring soon; nurse referred to doctor and flagged pharmacy. *Id.* at 260–61. |
| Dec. 1, 2014: | Medications ordered, including 120 doses of Prilosec. *Id.* at 262. |
| Dec. 3, 2014: | Mental health office visit; Timothy complained that he was running out of medications and needed to see a doctor. *Id.* 263. |
| Dec. 4, 2014: | Sick call visit to obtain skin medications; new medications/lotion added and CBC ordered. *Id.* at 265–66. |
| Dec. 11, 2014: | Chronic care clinics visit, including Hepatitis; labs reviewed. *Id.* at 270–72. |
| Dec. 12, 2014: | Mental health office visit; Timothy reported officials "trying to get his medication straight." *Id.* at 274. |
| Dec. 18, 2014: | Sick call visit to obtain refill on Excedrin and to obtain bottom tier bunk; medication refilled; agreed to have |

| | |
|---|---|
| | Timothy moved. *Id.* at 276. |
| Dec. 20, 2014: | Medical order for Timothy to be moved to bottom tier for period of one year. *Id.* at 277. |
| Dec. 20, 2014: | Emergency hospital visit with complaints of severe pain and spasms to back/legs; given Toradol shot for pain. *Id.* at 277–80. |
| Dec. 22, 2014: | MDOC called nurse based on Timothy's complaint of high blood pressure; advised Timothy to fill out sick call and contact hospital if dizziness worsened. *Id.* at 281. |
| Dec. 22, 2014: | Excedrin prescription refaxed to pharmacy. *Id.* at 281. |
| Dec. 24, 2014: | Sick call visit for blood pressure check. *Id.* at 284. |
| Dec. 26, 2014: | Sick call follow-up for psoriasis; medications refilled. *Id.* at 285. |
| Dec. 30, 2014: | Psychiatric 90-day visit. *Id.* at 286. |
| Jan. 14, 2014 : | Annual TB screen. *Id.* at 290. |
| Jan. 19, 2015: | Naproxen prescription faxed to pharmacy. *Id.* at 291. |
| Jan. 29, 2015: | Sick call visit for shampoo/lotion but clinic closed early by security. Appointment rescheduled for February 5, 2015. *Id.* at 292. |
| Feb. 5, 2015: | Sick call visit to refill meds and address back problem; medications updated. *Id.* at 295–96. |
| Feb. 19, 2015: | Sick call visit requesting handicapped chair for hip/back pain; evaluated by doctor and prescribed Ibuprofen; Dr.'s notes indicate he will request donut pillow be provided to Timothy. *Id.* at 299. |
| Feb. 20, 2015: | Request for donut pillow approved by Dr. Madubuonwu. *Id.* at 300. |
| Mar. 10, 2015: | Mental health sick call visit. *Id.* at 304–05. |
| Mar. 11, 2015: | Psychiatric medications faxed to pharmacy. *Id.* at 306. |
| Mar. 12, 2015: | Dental sick call for cleaning. *Id.* at 307–08. |
| Mar. 12, 2015: | Chronic care clinics, including Hepatitis; labs reviewed; requested refill on Ibuprofen and Prilosec; medications updated. *Id.* at 309–13. |
| Mar. 13, 2015: | Psychiatric visit. *Id.* at 313. |
| Mar. 19, 2015: | Mental health sick call; request that new medications be ordered, as prescribed medication not in stock. *Id.* at 315. |
| Mar. 30, 2015: | Sick call request regarding numb feet; complains he only has 4 days' worth of Prilosec remaining. *Id.* at 319. |

| | |
|---|---|
| Mar. 30, 2015: | Dr. Santos faxed 30-day Prilosec prescription to pharmacy. *Id.* at 321. |
| Apr. 2, 2015: | Sick call visit requesting 18-month supply of Prilosec; refill explained to Timothy and labs ordered. *Id.* at 323–24. |
| Apr. 8, 2015: | Specialty consult for Timothy's chronic heartburn requested and approved. *Id.* at 326–27. |
| Apr. 9, 2015: | Dental sick call for denture repair; lower dentures sent to lab for repair. *Id.* at 328–30. |
| Apr. 9, 2015: | While Timothy was signing a release in clinic, nurse practitioner noticed lesions on his face related to psoriasis and ordered skin medications; also ordered 150 calcium antacid chews. *Id.* at 330–32. |
| Apr. 14, 2015: | Sick call visit regarding medications; record indicates Timothy received requested medication on March 31, 2015. *Id.* at 333. |
| Apr. 15, 2015: | Psychiatric visit where Timothy complained he wanted his medications, especially Prilosec and Ibuprofen, and that medical repeatedly stops his access to medications. Psychiatrist noted review of Timothy's records shows that medical "has repeatedly dealt with the issues that he has raised." *Id.* at 333–34. |
| Apr. 16, 2015: | Sick call visit regarding stomach problems and back problems; Timothy told his medications had not been stopped and to take Ibuprofen with food. *Id.* at 338–39. |
| Apr. 23, 2015: | Sick call visit to report Tums not helping; Timothy advised his medical records were required regarding his history of bleeding ulcers before a specialty consult could be requested by medical staff; Tums refilled. *Id.* at 340–41. |
| Apr. 27, 2015: | Specialty consult for esophagus endoscopy/ligation. *Id.* at 341. |
| May 14, 2015: | Dentures delivered. *Id.* at 345. |
| May 17, 2015: | Emergency hospital visit initiated for chest pain that became gastrointestinal complaint upon arrival. Self-reported vomiting blood but not confirmed by staff. CBC ordered and Timothy started on Prilosec. *Id.* at 347–49. |
| May 21, 2015: | Ibuprofen prescription faxed to pharmacy. *Id.* at 352. |
| May 28, 2015: | Psychiatric visit; medications refilled. *Id.* at 352–54. |
| June 4, 2015: | Sick call visit regarding stomach pains and psoriasis; Timothy been noncompliant with his psoriasis medications but agreed to take them as ordered. 60-day supply of |

|  | Prilosec ordered. *Id.* at 357–58. |
|---|---|
| June 11, 2015: | Chronic care clinics, including Hepatitis; labs reviewed; new lotion added for rash. *Id.* at 359–65. |
| June 18, 2015: | Sick call visit to request medication refill; x-ray of hip ordered. *Id.* at 367. |
| June 23, 2015: | Left hip x-rayed. *Id.* at 368. |
| June 25, 2015: | Sick call visit requested for spine pain but asked for lotion at visit. Medication updated to add lotion. *Id.* at 369. |
| June 25, 2015: | Specialty consult for physical therapist requested and approved. *Id.* at 370–71. |
| June 25, 2015: | Mental health office visit. *Id.* at 372. |
| July 2, 2015: | Sick call request made June 29, 2015, complaining about medication refills now moot. Timothy stated he had received all medications. *Id.* at 377. |
| July 10, 2015: | Sick call visit for upper back pain. Requested physical therapy and "keep on person" status for all medications. Referred to physical therapy. *Id.* at 379–80. |
| July 10, 2015: | Specialty consult for physical therapy approved. *Id.* at 380–81. |
| July 15, 2015: | Mental health office visit. Timothy requested to see psychiatrist to address medical and mental health medications. *Id.* at 382–83. |
| July 16, 2015: | Sick call visit requesting MRI regarding back pain. Timothy advised to keep his appointment with physical therapy and informed that x-rays showed mild degeneration of his hip joint. *Id.* at 384. |
| July 23, 2015: | Sick call visit with multiple complaints. Timothy advised on use of compresses for back pain; stated he has all of his medications. *Id.* at 386–87. |
| Aug. 6, 2015: | Sick call visit; Ibuprofen refilled; 90-day Prilosec prescription refilled. *Id.* at 390. |
| Aug. 13, 2015: | Sick call visit for left ear infection and spot on head; Dr. Santos ordered antibiotics. *Id.* at 393. |
| Aug. 18, 2015: | Sick call visit; requested biopsy for spots on skin; nurse referred Timothy to doctor. *Id.* at 395–96. |
| Aug. 19, 2015: | Psychiatric 90-day visit. Provider notes Timothy spent most of session complaining about his difficulty in getting Prilosec and Ibuprofen prescriptions. Medication refilled. *Id.* at 398. |

Aug. 27, 2015:        Sick call visit to request biopsy to check for skin cancer. Provider notes condition is psoriasis and no biopsy needed. *Id.* at 400.

The Wexford Defendants further submitted the affidavit of Dr. Gloria Perry, the Chief Medical Officer of MDOC's Office of Medical Compliance. Doc. #187-4. According to Dr. Perry, the administration of medications to MDOC inmates is documented on a Medication Administration Record ("MAR"). Doc. #187-4 at ¶¶ 5, 6. Dr. Perry attests that Timothy's records demonstrate that he is given Omeprazole, the generic substitute for Prilosec, to keep on his person and to self-administer.[11] *Id.* at ¶ 7.

In response to the Wexford Defendants' summary judgment motion, and in support of claim that he has been denied medical treatment, Timothy filed excerpts from his medical records, and communications between his criminal attorney, Alison Steiner, and various MDOC officials.[12] *See, e.g.*, Doc. #216 at 38–39, 54–63; Doc. #241[13] at 13–20, 21–23, 25–26. Regarding the excerpts, he argues that "factual genuine issues will be present thru the digital medical records," which will show that he was denied the medications listed. Doc. #216 at 4–5.

In the communications, which begin August 13, 2014, and extend through November 11, 2016, Steiner requests by e-mail the assistance of MDOC personnel in resolving treatment issues Timothy had made known to her. According to the documents, Timothy's August 2014 complaint concerning his chronic care medications was satisfactorily resolved, Doc. #6 at 2; and

---

[11] Other documents filed in this action show Timothy's MAR from January 1, 2016, through June 30, 2016, which demonstrate that Timothy received 180 doses of Omeprazole during that time-frame. Doc. #174-1; Doc. #179. *See ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981) (court may take judicial notice of its own records).

[12] Timothy received Steiner's permission to use the communications as an exhibit. Doc. #241 at 11.

[13] Document #241 was filed as a supplement to Timothy's response, which supplement was attached to an unrelated filing.

his October 27, 2014, complaint was addressed and remedied, *id*. at 3. His November 2014 complaint involving his request to be moved to a bottom-level tier was also addressed and remedied by medical personnel. Doc. #6 at 3; Doc. #202 at 276. On December 1, 2014, Timothy expressed, through Steiner, his fear that he would run out of his chronic care medications in two days, Doc. #6 at 4; however, Steiner was assured by MDOC personnel that Timothy would have his medications on December 3, 2014. *See, e.g., id*. at 7. When, on December 3, 2014, Steiner e-mailed MDOC personnel at 11:12 a.m. that, after speaking with Timothy, Timothy had not received his medication, MDOC personnel responded approximately ninety minutes later that the person who assured the presence of the medication had been contacted and would hopefully resolve the issue. *Id*. at 8. While there is no follow-up communication regarding the matter in the record, the Court notes that Timothy's medical records demonstrate that 120 doses of Prilosec were ordered for him on December 1, 2014. Doc. #202 at 262.

Steiner contacted MDOC personnel by e-mail again on May 29, 2015, stating that Timothy had reported to her his concern that he would run out of Prilosec. Doc. #6 at 10. One of the Wexford Defendants, Dr. Madubuonwu, forwarded the e-mail and replied to Steiner, asserting that Timothy was enrolled in chronic care for his GERD and had a sufficient supply of Prilosec to get him to his next scheduled GERD appointment. *Id*. at 12. On June 22, 2015, Steiner e-mailed MDOC personnel that Timothy feared he would be moved to an upper-level tier, Doc. #216 at 63; however, there is nothing in the record indicating whether such a move occurred.

On November 10, 2016, Steiner contacted MDOC personnel and medical staff to address problems Timothy had relayed to her—namely, that he had been refused medical treatment under the guise that he had refused skin-lesion treatment, that he was not receiving his muscle relaxant,

and that he was not timely receiving his chronic care medications.   Doc. #241 at 22.   She also addressed his concern that he was a victim of retaliation.   *Id*.   MDOC personnel responded that there was no documentation in Timothy's record that he had refused an appointment, noting that Timothy sees medical staff "at least weekly."   *Id*. at 23.   MDOC personnel also stated that an appointment had been made at the hospital to remove the lesions, and verified that Timothy had received his medications as prescribed.   *Id*.

During the course of this case, Timothy has also suggested that his skin cancer is not being treated and has requested injunctive relief.   *See, e.g.,* Doc. #203.   However, Timothy received a skin biopsy on November 21, 2016, and a cancerous spot was completely removed.   Doc. #238-1; *see also* Doc. #235.   Additionally, an appointment was scheduled with an off-site surgeon to confirm that the skin cancer was completely removed during the biopsy.   Doc. #238-1.

Based on the record, it does appear that, at times, Timothy has had difficulty obtaining his medications.   He also missed at least two physical therapy appointments in July 2015 due to officials' failure to transport him to the appointment.   *See, e.g.,* Doc. #202 at 386, 388.   However, that some doses of medicine were occasionally missed or that security twice failed to transport him to a medical appointment for unknown reasons does not, without more, establish deliberate indifference.   *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992) (deficiencies in treatment, including missed occasional dose of medication, does not constitute deliberate indifference).   While Timothy faults the Wexford Defendants for discontinuing his Prilosec prescription and placing him on Rolaids, he fails to demonstrate their deliberate indifference by substituting his hindsight opinion of what treatment he should have received in place of the medical judgments rendered by professionals at the time he received medical care.   *See Norton v. Dimazana*, 122

F.3d 286, 292 (5th Cir. 2001) (plaintiff's disagreement with course of medical treatment chosen will not support claim of deliberate indifference). Although Timothy was hospitalized in May 2015 after his Prilosec was discontinued, his medical records demonstrate that he was placed back on the medication while he was still hospitalized. Doc. #202 at 347–49. Such response belies Timothy's assertion that the Wexford Defendants were deliberately attempting to harm him by refusing to provide him with Prilosec.

Based on the Court's thorough review of all of the evidence produced in this case, the Court finds that Timothy's claims against the Wexford Defendants fail, as the evidence produced, including that submitted by Timothy, makes it apparent that Timothy has been regularly monitored, evaluated, and treated for his numerous medical and psychiatric complaints. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (medical records of sick calls, examinations, diagnoses, and medications may rebut inmate's allegations of deliberate indifference). While he has not been provided with the medical treatment he apparently believes is warranted, Timothy has not produced any evidence that any of the Wexford Defendants acted with a "wanton disregard" for his "serious medical needs" as is necessary to support a claim of deliberate indifference to his serious medical needs. *Davidson v. Tex. Dept. of Crim. J.*, 91 F. App'x 963, 965 (5th Cir. 2004). Accordingly, there is no genuine issue of disputed material fact as to Timothy's claims against the Wexford Defendants, and the Wexford Defendants are entitled to judgment as a matter of law.[14]

---

[14] Because there is no merit to Timothy's claims of deliberate indifference, any claim against Wexford itself would also fail on the merits. Section 1983 does not establish respondeat superior liability. *Oliver v. Scott*, 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) ("Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").

# IV
## MDOC Defendants' Motion for Summary Judgment

The MDOC Defendants have also moved for summary judgment, asserting the defense of sovereign immunity as to the claims against them in their official capacities, and the defense of qualified immunity as to the claims against them in their individual capacities. Doc. #192. After the MDOC Defendants filed their summary judgment motion, Timothy filed a motion requesting that the MDOC Defendants be dismissed from this action. Doc. #214; Doc. #220. In a subsequent filing, however, Timothy contends that he "erroneously" requested the dismissal of the MDOC Defendants. Doc. #225. The Court, therefore, considers the merits of the MDOC Defendants' summary judgment motion and, accordingly, will deny as moot Timothy's motion to dismiss the MDOC Defendants.

### A. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution bars suits by private citizens against states in federal courts unless the particular state has waived its immunity, or Congress has abrogated the state's sovereign immunity. U.S. Const. Amend XI; *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Mississippi has not waived its sovereign immunity. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). And, "MDOC is considered an arm of the State of Mississippi" and is thus immune from suit. *Williams v. Miss. Dep't of Corrs.*, No. 3:12-cv-259, 2012 WL 2052101, at *1 (S.D. Miss. June 6, 2012); *see* Miss. Code Ann. § 47-5-1, *et seq*. Accordingly, the MDOC Defendants are entitled to Eleventh Amendment immunity as to the

monetary claims against them in their official capacities.[15]

### B.   Qualified Immunity

The MDOC Defendants claim the defense of qualified immunity as to Timothy's claims against them in their individual capacities.   Qualified immunity protects governmental employees from individual civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known."   *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted).   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."   *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

An evaluation of the application of qualified immunity requires a court to conduct a two-pronged inquiry:   (1) whether a clearly established constitutional right would have been violated on the facts alleged, and (2) "whether the defendant's actions were objectively unreasonable in light of the clearly established law at the time of the conduct in question."   *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (citation omitted).    A defendant's actions are deemed "objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known" that the conduct at issue violated clearly established law.   *Thompson v. Upshur County Texas*, 245 F.3d 447, 457 (5th Cir. 2001) (citation omitted) (emphasis in original).   The sequence of the two-prong inquiry is not mandatory; a court may rely upon either prong of the defense in its analysis first.   *See, e.g., Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citation omitted).

---

[15]   An exception to sovereign immunity exists in cases of prospective injunctive relief.   *See, e.g., Ex Parte Young*, 209 U.S. 123, 167 (1908).   Therefore, Timothy's claim for prospective injunctive relief in the form of medical care is not barred by sovereign immunity.   But, as the Court found above, his medical care claims cannot be sustained.

Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden of rebutting the defense "by establishing that the official's allegedly wrongful conduct violated clearly established law." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2003). This burden does not allow the plaintiff to "rest on conclusory allegations and assertions" but rather requires the plaintiff to "demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

### 1. Denial of medical care

In this case, because the Court found no deliberate indifference by the Wexford Defendants to Timothy's serious medical needs, Timothy cannot prove that the MDOC Defendants denied him necessary medical attention based on retaliatory motives or racial considerations.[16] Additionally, Timothy has not established that the individual MDOC Defendants are responsible for prescribing or administering medications. Finally, Timothy cannot otherwise demonstrate supervisory liability against the MDOC Defendants because he has not identified an unconstitutional policy or practice implemented by a supervisory official. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009); *see Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (noting that §1983 does not create supervisory or respondeat superior liability). Thus, Timothy's denial of medical care claims against the individual MDOC Defendants fail.

### 2. Retaliation

To state a claim for retaliation under § 1983, a plaintiff must allege (1) a specific

---

[16] The Court's conclusion regarding the Wexford Defendants applies to the MDOC Defendants due to the MDOC Defendants' joining the Wexford Defendants' motion.

constitutional right; (2) the defendant's intent to retaliate against the prisoner for exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999). In order to prove causation, a plaintiff must show that "but for the retaliatory motive the complained of incident would not have occurred." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (internal quotation marks and alteration omitted). A plaintiff cannot support a claim of retaliation merely by his personal belief that he is a victim, *Jones*, 188 F.3d at 325; and a conclusory allegation of retaliation is insufficient to state a claim, *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992). Notably, the Fifth Circuit requires retaliation claims to be viewed with skepticism. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Here, Timothy has not presented any evidence that he ever complained about a leak in his cell, and his conclusory allegation that his complaint created a retaliatory motive by the MDOC Defendants is insufficient. *See Wilson,* 976 F.2d at 958 (finding conclusory allegations insufficient to establish claim of retaliation). Moreover, the Fifth Circuit has determined that baseless retaliation claims should not be allowed to proceed to trial simply because the alleged constitutional violation occurred after a prisoner's complaint to the administration, noting that "[i]t is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another[.]" *Whittington v. Lynaugh*, 842 F.2d 818, 819 (1988). Accordingly, the Court finds the MDOC Defendants are entitled to judgment as a matter of law.

## VI
## Norma Evans' Motion to Dismiss

Norma Evans has moved to dismiss on her assertion that she was never served with

process.  Doc. #189.  Timothy has moved "to join" her motion requesting dismissal.  Doc. #213.

Because the Wexford Defendants, including Norma, are entitled to summary judgment, Norma's

motion to dismiss, and Timothy's motion to join it, will be denied as moot.[17]

### VII
### <u>Timothy's "Motion to Counter Summary Judgement"</u>

In his "Motion to Counter Summary Judgement," which the Court construes as a summary

judgment motion, Timothy argues that his medical records and the e-mails between MDOC

personnel and his criminal attorney, Steiner, demonstrate that MDOC personnel have abused him

since he filed an administrative grievance in 2014.  Doc. #215; *see also* Doc. #241.  Although the

filing is styled as a motion, it is apparent that Timothy is actually requesting that the Court deny

summary judgment to the Wexford Defendants.  *See, e.g.,* Doc. #215 at 15–16 ("Thus the

summary judg[]ment must be denied because of the opposing evidence that is certified by the[ir]

own notary.).  As the Court has already determined that there is no genuine issue of material fact

as to whether the Wexford Defendants were deliberately indifferent to Timothy's serious medical

needs, Timothy is not entitled to summary judgment as a matter of law.  Accordingly, to the

extent Timothy's motion is construed as one for summary judgment, the motion will be denied.

### VIII
### <u>Motion to Reschedule Trial</u>

The Wexford Defendants request that the trial in this case "be rescheduled until after a

ruling on the dispositive motions."  Doc. #251.  In light of the Court's decisions above, the

---

[17] Though these motions are deemed moot, the Court notes that Norma joined in an answer filed in this case and did not raise insufficiency of process in a pre-answer motion, thereby waiving the defense.  *See* Fed. R. Civ. P. 12(h)(1). Additionally, the Court notes that Timothy, a plaintiff proceeding in forma pauperis, is entitled to rely on the service by the United States Marshals without penalty for their failure to properly effect service.  *See, e.g., Rochon v. Dawson*, 828 F.2d 1107, 1109–10 (5th Cir. 1987).

motion will be denied as moot.

**IX**
**Conclusion**

For the reasons above:

1.     The Wexford Defendants' motion for summary judgment [187], which was joined by the MDOC Defendants,[18] is **GRANTED**;

2.     The MDOC Defendants' motion for summary judgment [192] is **GRANTED**;

3.     Timothy's motion to dismiss the MDOC Defendants [214] is **DENIED as moot**;

4.     Norma's motion to dismiss [189], and Timothy's motion to join her motion to dismiss [213] are **DENIED as moot**;

5.     Timothy's motion for summary judgment [215] is **DENIED**; and

6.     The Wexford Defendants' motion to reschedule trial [251] is **DENIED as moot**.

Accordingly, this action is dismissed with prejudice.   A final judgment consistent with this memorandum opinion and order will be issued.

**SO ORDERED**, this 14th day of February, 2017.

**/s/ Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**

---

[18] Doc. #194.